FILED
8/10/2022 11:42 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Christi Underwood DEPUTY

**EXHIBIT A-1**

5 CITS-ESERVE
3 CITS SOS-ESERVE

DC-22-09632

## CAUSE NO. _____

| | | |
|---|---|---|
| **H&K INTERNATIONAL, INC.,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| **F&M INSTALLATIONS CORP.,** | § | |
| **H&S INSTALLATIONS, CORP.,** | § | |
| **SELECTIVE INSURANCE** | § | |
| **COMPANY OF AMERICA,** | § | |
| **ACE AMERICAN INSURANCE** | § | 14th |
| **COMPANY, AND KGK** | § | |
| **MANAGEMENT, INC.,** | § | |
| | § | |
| *Defendants.* | § | **_____ JUDICIAL DISTRICT** |

## PLAINTIFF'S ORIGINAL PETITION

Plaintiff H&K International, Inc. files this Original Petition against Defendants F&M Installations Corp., H&S Installations Corp., Selective Insurance Company of America, ACE American Insurance Company, and KGK Management, Inc. (collectively, "Defendants"), and would respectfully show the Court as follows:

### PARTIES

1.    Plaintiff H&K International, Inc. ("HKI") is a Texas corporation with its principal place of business located in Dallas County, Texas.

2.    Defendant F&M Installations Corp. ("F&M") is a foreign corporation that regularly transacts business in Texas. F&M can be served through its registered agent, Fabian Serrato at 7320 Iris Avenue, Hannover Park, Illinois 60133. Additionally, the secretary of state is an agent for service of process as F&M is required by statute to designate or maintain a resident agent or engages in business in this state, but has not designated or maintained a resident agent for service of process.

3.      Defendant H&S Installations, Corp. ("H&S") is a foreign corporation that regularly transacts business in Texas.  H&S can be served through its registered agent, Fabian Serrato at 7320 Iris Avenue, Hannover Park, Illinois 60133.  Additionally, the secretary of state is an agent for service of process as H&S is required by statute to designate or maintain a resident agent or engages in business in this state, but has not designated or maintained a resident agent for service of process.

4.      Defendant Selective Insurance Company of America ("Selective") is an insurance company that conducts the business of insurance in the State of Texas. Selective can be served through its registered agent, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

5.      Defendant ACE American Insurance Company ("ACE") is a foreign corporation that regularly transacts business in Texas.  ACE can be served through its registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201.

6.      KGK Management, Inc. ("KGK") is a foreign corporation that that regularly transacts business in Texas, including contracting with a Texas resident under which a portion of the performance was to occur in Texas.  KGK can be served through its registered agent, Keith G. Kazanova, at 2600 Beverly Dr., Ste. 109, Aurora, IL 60502.  Additionally, the secretary of state is an agent for service of process as KGK is required by statute to designate or maintain a resident agent or engages in business in this state, but has not designated or maintained a resident agent for service of process.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over the lawsuit because the amount in controversy exceeds the minimum jurisdictional requirements of this Court.

8.     This Court has personal jurisdiction over Defendants because Defendants regularly transact business in Texas and purposefully availed themselves of the privileges and benefits of conducting business in Texas.[1]

9.     Venue is proper in Dallas, Texas, pursuant to Section 15.002(a) of the TEXAS CIVIL PRACTICE AND REMEDIES CODE because all or a substantial part of the events or omissions giving rise to the claim for breach of a written contract(s) occurred in Dallas County, Texas. Further, venue is proper in Dallas, Texas pursuant to Section 15.032 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE because Dallas County is the county in which the policyholder instituting the suit resided at the time the cause of action accrued.

## DISCOVERY

10.     This case should proceed as a Level 2 case pursuant to TEXAS RULE OF CIVIL PROCEDURE 190.3.

## RULE 47 STATEMENT

11.     Pursuant to TEXAS RULE OF CIVIL PROCEDURE 47, HKI seeks damages that are within the jurisdictional limits of the Court.  Specifically, HKI seeks monetary relief over $1,000,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorneys' fees.

12.     HKI further seeks judgment for all other relief to which the Court deems it justly entitled.

---

[1] See TEX. CIV. PRAC. & REM. CODE § 17.042.

## FACTUAL BACKGROUND

**A.    HKI and McDonald's Relationship**

13.    HKI is a Texas-based manufacturer and supplier of kitchen equipment to some of the world's largest restaurant chains, including McDonald's restaurants.

14.    HKI is an approved supplier for McDonald's USA, LLC ("McD USA") and its franchisees.

**B.    Agreement between HKI and F&M**

15.    F&M is an installer of commercial kitchen equipment.

16.    On October 29, 2014, HKI and F&M entered into a Trade/Sub Contractor Standards & Agreement ("F&M Agreement"), in order for F&M to perform installations of equipment for McD USA's franchisees who ordered equipment from HKI.

17.    Among other things, F&M agreed that it would engage in reasonable conduct and ensure workmanlike conduct was being carried out. Specifically, F&M's work "is expected to be performed in a good and workmanlike manner, defined as workmanship which meets or exceeds those criteria indicated in local applicable building codes."

18.    Moreover, the F&M Agreement specified that F&M and its employees "shall comply with all applicable laws, codes, rules, regulations and requirements pertaining to the performance of its work, including the Federal Occupational Safety and Health Act" and "[p]rior to performing any work activities, [F&M] shall evaluate the safety of the work in place and working conditions in the area in which its employees and [F&M] will work and will notify [HKI] in writing of any unsafe work conditions or defective work in place."

19.    The F&M Agreement also required F&M to maintain certain insurance requirements and name HKI as an "Additional Insured" on its insurance policies.  F&M was also

required to ensure its insurance carriers waived subrogation against HKI arising from F&M's work.

20. Additionally, F&M agreed to ensue all of its sub-contractors (such as H&S) maintained the same required insurance coverage and named HKI as an "Additional Insured" on their policies.

21. F&M also agreed to indemnify and hold harmless HKI against loss or threatened loss or expense resulting from the actual or potential liability of F&M.

**C.    Agreement between HKI and H&S**

22. H&S is also an installer of commercial kitchen equipment. H&S and F&M are simply alter egos of one another.

23. H&S and F&M were both owned and operated by Fabian Serrato and Michael Hall.[2] H&S and F&M share a common address, common employees, and are believed to use centralized accounting. H&S and F&M have employees of one entity render services on behalf of the other. The allocation of profits and losses between the entities is unclear.

24. As such, H&S is bound by the F&M Agreement as an alter ego of F&M.

25. Additionally, Fabian Serrato, a common owner of both H&S and F&M, entered into and executed an Installer's Job Form related to H&S's work as a contractor for the installation of HKI kitchen equipment in April 2013 ("H&S Agreement").

26. Under the H&S Agreement, Fabian separately agreed to carry certain insurance coverage, name HKI[3] as an "Additional Insured" on its insurance policies, waive subrogation, and hold HKI harmless from its work.

---

[2] F&M stands for Fabian (Serrato) and Michael (Hall). H&S is believed to stand for (Michael) Hall and (Fabian) Serrato. Mr. Hall has recently passed.

[3] The H&S Agreement specifies H&K Dallas, Inc., which is H&K International, Inc.'s original name.

**D.      Selective Insurance Policies**

27.     On February 16, 2018, Selective placed coverage for commercial general liability coverage and commercial inland marine coverage insuring F&M, numbered as S 2157586 with a policy period from April 6, 2018 to April 6, 2019 ("F&M Policy").

28.     The F&M Policy provides that "any person or organization whom [F&M] ha[s] agreed in a written contract, written agreement or written permit that such person or organization be added as an additional insured on [F&M's] policy. . . " should be named as an additional insured to the policy.  Because the F&M Agreement required F&M to name HKI as an additional insured, HKI is an additional insured under the F&M Policy.

29.     The F&M Policy also provides coverage for HKI as an "Insured Contract" based on F&M's indemnity obligations.

30.     Similarly, on February 23, 2018, Selective placed coverage for commercial general liability coverage and commercial inland marine coverage insuring H&S, numbered as S 2166764 with a policy period from April 17, 2018 to April 17, 2019 ("H&S Policy").

31.     Like the F&M Policy, the H&S Policy provides that "any person or organization whom [H&S] ha[s] agreed in a written contract, written agreement or written permit that such person or organization be added as an additional insured on [H&S's] policy. . . " should be named as an additional insured to the policy.

32.     Because H&S is bound by the F&M Agreement as an alter ego of F&M, and because the H&S Agreement required H&S to name HKI as an additional insured, HKI is an additional insured under the H&S Policy.

33.     The H&S Policy also provides coverage for HKI as an "Insured Contract" based on H&S's indemnity obligations.

**E.      ACE Insurance Policy for HKI**

34.      HKI purchased Policy No. OGLG25702979 with a policy period from July 1, 2018 to July 1, 2019 with Ace American Insurance Company ("ACE"), a member of the ACE Group of Insurance Companies ("ACE Policy").

35.      The ACE Policy provides coverage for sums that HKI becomes legally obligated to pay as damages because of "property damage" that is caused by an "occurrence" and occurs during the policy period. The ACE Policy also obligates ACE to defend HKI against any "suit" seeking those damages.

**F.      KGK's relationship with HKI**

36.      KGK Management, Inc. ("KGK") owned a McDonald's franchise located at 1023 N. Lake Street in Aurora, Illinois ("Restaurant").

37.      KGK entered an agreement with HKI to purchase various commercial kitchen equipment from HKI for its Restaurant ("KGK Agreement").  In the KGK Agreement, KGK agreed that mechanical and electrical connections costs associated with the purchased equipment was not HKI's responsibility.  KGK expressly agreed that HKI was not responsible for mechanical and electrical connections and that HKI's only obligation was to "set" the equipment in place ready for the mechanical and electrical connections by others.  KGK also agreed that HKI would not be liable for the service mistakes of third parties.

38.      KGK further agreed that HKI would not be liable for incidental and/or consequential damages including loss of profits.

**G.      McDonald's Incident**

39.      On or about January 11, 2019, Prairie Contractors, Inc. ("Prairie"), KGK's or McD USA's general contractor accepted delivery of the equipment purchased by KGK.  Mike Swanson signed for delivery on behalf of Prairie.

40.     On January 17, 2019, a fire broke out at the Restaurant while Ivan Villapando was welding in relation to the installation of a vent hood (the "Incident").

41.     It is unclear whether Mr. Villapando was employed by F&M or H&S at the time of his work.  One of the two companies sent him there to install equipment for KGK's benefit.  However, Fabian Serrato and F&M were the only ones assigned by HKI to do the installation for KGK.[4]

## H.     McDonald's and KGK demands

42.     Following the Incident, McDonald's and KGK have made demands on numerous parties for amounts they allege were lost due to the fire.  KGK specifically demanded amounts for lost profits.

43.     The crux of the demands were that HKI was somehow vicariously liable for the conduct of Mr. Villapando.  HKI disputes that it has any liability for the Incident.  However, still, HKI sought defense and indemnity from F&M, H&S, Selective, and ACE for the demands.

44.     Despite a multitude of correspondence between the parties, neither F&M, H&S, nor Selective made any efforts to defend or indemnify HKI from the demands.  ACE initially hired counsel to investigate and defend HKI from the demands, but has now declined any defense or indemnity.

## I.     McDonald's Lawsuit

45.     On May 23, 2022, BRS Insurance Company ("BRS"), on its own behalf and as subrogee of McDonald's, and McDonald's filed a Complaint against Prairie Contractors, Inc., H&K Dallas, Inc., HKI, F&M, and H&S styled, *BRS Insurance Company, on its own behalf and as subrogee of McDonald's, and McDonald's v. Prairie Contractors, Inc., H&K Dallas, Inc., H&K*

---

[4] The KGK Agreement specifies that HKI is only responsible for placing the equipment in the location ready for mechanical and electrical connections.

*International, Inc., F&M Installation, and H&S Installations,* Case No. 2022-LA-000211; in the Sixteenth Judicial Circuit in Kane County, Illinois ("McDonald's Lawsuit").

46.     BRS and McDonald's assert claims of negligence, breach of contract, and contractual indemnification against HKI. Among other things, the McDonald's Lawsuit alleges:

a.     That HKI is liable for any breaches of safety rules by HKI itself or its Company Affiliates, including subcontractors.

b.     That HKI must indemnify McDonald's from and against any improper or defective installation.

c.     That HKI is vicariously liable for F&M and H&S because HKI allegedly owed a duty to McDonald's to perform its installation services with reasonable care and to exercise supervisory control over subcontractor(s) providing work with reasonable care. According to McDonald's, HKI allegedly breached those duties by failing to observe and failing to take any steps to ensure that F&M and H&S observed minimum safety standards and regulations relating to welding.

d.     That HKI allegedly failed to meet its obligations to ensure that F&M and H&S's installation of the ventilation hood was free from defects in workmanship.

e.     That HKI allegedly failed to meet its obligations to ensure that F&M and H&S complied with applicable law and regulations, including OSHA standards relating to welding work.

47.     On June 8, 2022, HKI notified F&M, H&S, and Selective of McDonald's Lawsuit. Although neither F&M nor its carriers had accepted their obligation to defend and indemnify HKI,

HKI explained that the liability asserted against HKI is a direct result of F&M and H&S's involvement whether by performing the installation or hiring H&S to do so. HKI further demanded defense and indemnity as an Additional Insured under the F&M Policy and the H&S Policy, as well as directly from F&M and H&S. Neither Selective, F&M, nor H&S has responded to HKI's demand for defense and indemnity of the McDonald's Lawsuit.

48.     Also on June 8, 2022, HKI notified ACE of the McDonald's Lawsuit. While ACE initially agreed to defend HKI, on August 4, 2022, ACE notified HKI that it has determined no coverage is available for the McDonald's Lawsuit because it does not believe McDonald's Lawsuit alleges that HKI is vicariously liable for the acts or omissions of the subcontractors.

## CAUSES OF ACTION

**A.     F&M's Breach of Contract—F&M Agreement**

49.     HKI reiterates and adopts each and every statement in the foregoing paragraphs as if set forth fully here.

50.     The F&M Agreement is a valid, enforceable contract between HKI and F&M.

51.     HKI performed, tendered performance, and/or was excused from performing its contractual obligations.

52.     Pursuant to the F&M Agreement, F&M agreed "to indemnify and hold harmless [HKI] against loss or threatened loss or expense by reason of the liability or potential liability of [HKI] for or arising out of any claims for damages." McDonald's and KGK, and their respective carriers, have made claims for damages arising out of F&M's work in relation to the F&M Agreement with HKI. F&M owes this indemnity, yet HKI has received no acknowledgement of F&M's obligation or any attempt to intervene on HKI's behalf to remedy the claims made by McDonald's and KGK.

53.     Also in the F&M Agreement, F&M agreed to maintain a $1 million general liability insurance policy and name HKI as an Additional Insured on that insurance policy. F&M further agreed to name HKI as an Additional Insured on its insurance policies "for all liability arising from the Contract." However, HKI tendered its defense to F&M's insurance company as an Additional Insured, and F&M's insurance company, Selective, has wrongfully denied HKI's status as an Additional Insured under the F&M Policy.  This constitutes a breach of the F&M Agreement with HKI.

54.     Moreover, F&M agreed to ensure that all of its subcontractors would "maintain insurance in like form and amounts, including Additional Insured requirements." This means F&M agreed to ensure H&S and anyone else conducting work received as a result of the F&M Agreement with HKI would carry a $1 million general liability insurance policy and name HKI as an Additional Insured on that policy.  HKI tendered its defense to H&S's insurance company, Selective, as an Additional Insured, but Selective has declined to offer a defense or indemnity to HKI.  This constitutes another breach of the F&M Agreement with HKI.

55.     F&M's breaches with respect to the F&M Agreement have caused HKI damages, for which F&M is liable, including HKI's actual damages (direct, indirect and/or consequential), interest, costs, and attorneys' fees.

**B.      H&S's Breach of Contract—F&M Agreement and H&S Agreement**

56.     HKI reiterates and adopts each and every statement in the foregoing paragraphs as if set forth fully here.

i.      *The F&M Agreement*

57.     The F&M Agreement is a valid, enforceable contract between HKI and H&S as an alter ego of F&M.

58.     HKI performed, tendered performance, and/or was excused from performing its contractual obligations.

59.     Pursuant to the F&M Agreement, H&S agreed "to indemnify and hold harmless [HKI] against loss or threatened loss or expense by reason of the liability or potential liability of [HKI] for or arising out of any claims for damages." McDonald's and KGK, and their respective carriers, have made claims for damages arising out of H&S's work in relation to the F&M Agreement with HKI.  H&S owes this indemnity, yet HKI has received no acknowledgement of H&S's obligation or any attempt to intervene on HKI's behalf to remedy the claims made by McDonald's and KGK.

60.     Also in the F&M Agreement, H&S agreed to maintain a $1 million general liability insurance policy and name HKI as an Additional Insured on that insurance policy. H&S further agreed to name HKI as an Additional Insured on its insurance policies "for all liability arising from the Contract." However, HKI tendered its defense to H&S's insurance company as an Additional Insured, and H&S's insurance company, Selective, has wrongfully denied HKI's status as an Additional Insured under the H&S Policy.  This constitutes a breach of the F&M Agreement with HKI.

            ii.      *The H&S Agreement*

61.     The H&S Agreement is a valid, enforceable contract between HKI and H&S.

62.     HKI performed, tendered performance, and/or was excused from performing its contractual obligations.

63.     Pursuant to the H&S Agreement, H&S agreed to carry a $1 million liability policy, name HKI  as an "Additional Insured" on its insurance policies, waive subrogation, and hold HKI harmless from liabilities arising from its work.

64.     Selective, H&S's insurance company, has refused to defend HKI as an Additional Insured under the H&S Policy.  This constitutes a breach of the H&S Agreement with HKI.

65.     H&S has failed to defend or indemnify HKI in order to hold it harmless from liabilities arising from H&S's work.  This constitutes a breach of the H&S Agreement with HKI.

66.     H&S's breaches with respect to the F&M Agreement and H&S Agreement have caused HKI damages, for which H&S is liable, including HKI's actual damages (direct, indirect and/or consequential), interest, costs, and attorneys' fees.

**C.     Selective's Breach of Contract—F&M Policy and H&S Policy**

67.     HKI reiterates and adopts each and every statement in the foregoing paragraphs as if set forth fully here.

68.     HKI and Selective have a valid, enforceable contract, namely the F&M Policy and H&S Policy.

69.     HKI is the proper party to bring suit for breach of contract because it is named as an Additional Insured.

70.     HKI performed, tendered performance, and/or was excused from performing its contractual obligations.

71.     Selective's failures and refusals to defend and indemnify HKI as an Additional Insured as it was obligated to do under the terms of the F&M Policy, H&S Policy, and under the laws of the State of Texas constitute breaches of contract.

72.     Selective's breaches of contract with respect to the F&M Policy and H&S Policy caused HKI's damages, for which Selective is liable, including HKI's actual damages (direct, indirect and/or consequential), interest, costs, and attorneys' fees.

**D.**     **ACE's Anticipatory Breach of the ACE Policy**

73.     HKI reiterates and adopts each and every statement in the foregoing paragraphs as if set forth fully here.

74.     HKI and ACE have a valid, enforceable contract, namely the ACE Policy.

75.     HKI is the proper party to bring suit for breach of contract because it is the named insured for the ACE Policy.

76.     HKI performed, tendered performance, and/or was excused from performing its contractual obligations.

77.     ACE's failures and refusals to defend and indemnify HKI as the named insured as it was obligated to do under the terms of the ACE Policy and under the laws of the State of Texas constitute breaches of contract. ACE has denied coverage because it believes HKI has not met the condition precedent to an endorsement pertaining to the use of heat or torches. This endorsement, however, is not applicable where the claim or lawsuit alleges that HKI is vicariously liable for its subcontractor's actions — which is the case in the McDonald's Lawsuit.

78.     ACE committed an anticipatory breach of the ACE Policy by unequivocally repudiating its obligations under the ACE Policy. It is clear that McDonald's has asserted that HKI is vicariously liable for F&M and H&S's actions through the McDonald's Lawsuit. Since HKI was not at the Restaurant at the time of the Incident, each of McDonald's claims are based on vicarious liability.

79.     ACE committed a second anticipatory breach of the ACE Policy by unequivocally repudiating its obligations under the ACE Policy in relation to the Incident. While it is clear that KGK has also asserted that HKI is vicariously liable for F&M's and H&S's actions through its demand, KGK has yet to file suit.  Thus, ACE's declination of coverage is erroneous and a breach of the ACE Policy.

80.     ACE's breaches of contract with respect to the ACE Policy caused HKI's damages, for which ACE is liable, including HKI's actual damages (direct, indirect and/or consequential), interest, costs, and attorneys' fees.

**E.     Selective and ACE's Violations of the TEXAS INSURANCE CODE**

81.     HKI reiterates and adopts each and every statement in the foregoing paragraphs as if set forth fully here.

82.     Selective's and ACE's conduct constitute multiple violations of the TEXAS INSURANCE CODE.  Violations under Chapter 542 are made actionable by Section 542.060 of the TEXAS INSURANCE CODE.[5]

83.     HKI has valid claims under the F&M Policy and H&S Policy as an Additional Insured as well as a claim under the ACE Policy as the named insured.  HKI gave proper notice of the claim to both Selective and ACE.  Selective is liable to defend HKI and to indemnify it for any loss incurred by HKI arising out of the Incident, namely the McDonald's Lawsuit. ACE is also liable to provide coverage and defend and indemnify HKI for damages arising out of the McDonald's Lawsuit.  However, both Selective and ACE have wrongfully denied HKI's valid claim.

84.     ACE and Selective have violated Chapter 542 of the TEXAS INSURANCE CODE by:

      a.     failing to provide a timely acknowledge of the claim in violation of TEX. INS. CODE § 542.055;

      b.     failing to provide a timely notice of acceptance or rejection in violation of TEX. INS. CODE § 542.056; and

      c.     failing to timely pay the claim after receiving all items, statements, and forms reasonably requested in violation of TEX. INS. CODE § 542.057-058.

---

[5] *See* TEX. INS. CODE § 542.060.

85.     Selective's and ACE's wrongful acts and omissions in violation of the TEXAS INSURANCE CODE were the producing cause of HKI's damages, including actual damages (direct, indirect and/or consequential), costs, and attorneys' fees.

86.     Selective's and ACE's wrongful acts and omissions in violation of Chapter 542 of the TEXAS INSURANCE CODE entitle HKI to recover 18% interest on its actual damages in addition to its reasonable and necessary attorneys' fees.[6]

**F.      Bad Faith / Breach of the Duty of Good Faith and Fair Dealing**

87.     HKI reiterates and adopts each and every statement in the foregoing paragraphs as if set forth fully here.

88.     A special relationship exists between ACE and HKI as a result of the general liability policy issued by ACE.  Inherently unequal bargaining power exists between HKI and ACE.

89.     ACE had no reasonable basis to initiate a suit against HKI and then deny HKI's claim outright, and it knew or should have known that it had no reasonable basis for denial.

90.     ACE pre-textually looked only for ways to avoid coverage rather than first trying to find coverage or even fulfilling its obligation to provide a defense and indemnity to HKI owed under the ACE Policy.

91.     ACE had a duty to investigate the claim fairly and objectively, but it clearly failed to make any attempt to do so, as evidenced by its wholesale denial of the claim without even maintaining HKI's defense while it sought direction on the application of certain policy provisions. Indeed, ACE made every effort to leave its insured vulnerable to the demands and lawsuit brought by McDonald's and KGK.

---

[6] The attorneys' fees are taxed as part of the costs in the case.

92.     Nonetheless, ACE is charged with full and complete knowledge of what a reasonable investigation would have revealed, and its actions must be judged accordingly.

93.     Accordingly, ACE failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim where its liability had become reasonably clear.

94.     Further, ACE's failure to comply with provisions of the Unfair Claim Settlement Practices Act are evidence of ACE's bad faith, including ACE:

> d.      failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurer's policies in violation of TEX. INS. CODE 542.003(b)(3);
>
> e.      not attempting in good faith to effect a prompt, fair, and equitable settlement of a claim submitted in which liability has become reasonably clear in violation of TEX. INS. CODE 542.003(b)(4), including its continued denial to provide coverage under the ACE Policy; and
>
> f.      compelling a policyholder to institute a suit to recover an amount due under a policy in violation of TEX. INS. CODE 542.003(b)(5).

95.     ACE's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to HKI.

96.     ACE's breach of the duty of good faith and fair dealing proximately caused actual and consequential damages to HKI.

97.     Therefore, for ACE's breach of the duty of good faith and fair dealing, HKI is entitled to compensatory damages, including all forms of loss resulting from ACE's bad faith, and other damages for additional costs, economic hardship, punitive damages, and exemplary damages.

**J.      Declaratory Judgment Against KGK**

98.     HKI reiterates and adopts each and every statement in the foregoing paragraphs as if set forth fully here.

99.     KGK and HKI are parties to a written contract.

100.    KGK has demanded sums not recoverable under its contract with HKI.

101.    In an effort to avoid uncertainty with respect to rights, status, and other legal relations of the Parties under the KGK Agreement, HKI invokes the Uniform Declaratory Judgment Act under Chapter 37 of the TEXAS CIVIL PRACTICES AND REMEDIES CODE.

102.    Specifically, HKI seeks declarations that pursuant to the KGK Agreement that:

a.      HKI is not liable for any incidental and/or consequential damages including loss of profits;

b.      HKI is not responsible for mechanical and electrical connections of equipment; and

c.      HKI is not liable for damage caused by the service mistakes of third parties.

## CONDITIONS PRECEDENT

103.    HKI reiterates and adopts each and every statement in the foregoing paragraphs as if set forth fully here.

104.    All conditions precedent to HKI recovery against each Defendant has been fully performed, occurred, or have been waived.

## ATTORNEYS' FEES

105.    HKI reiterates and adopts each and every statement in the foregoing paragraphs as if set forth fully here.

106.    As a result of Defendants' wrongful conduct and breaches, HKI retained the undersigned counsel to assist in seeking recovery for HKI's claims, including the filing of this Petition and any further amended or supplemental petitions.  HKI has incurred and will incur attorneys' fees and costs in bringing this action.

107.    Pursuant to Chapter 38 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE, HKI is entitled to recover reasonable and necessary attorneys' fees incurred in the prosecution of its claims

against Defendants for breach of their respective written contracts with HKI (i.e. the F&M Agreement, H&S Agreement, and the policies).

108.    Pursuant to Chapter 37 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE, HKI is entitled to recover reasonable and necessary attorneys' fees incurred in the prosecution of its declaratory judgment against KGK.

109.    Pursuant to Chapter 542 of the TEXAS INSURANCE CODE, HKI is entitled to recover reasonable and necessary attorneys' fees incurred in the prosecution of HKI's claims against the insurer Defendants for their statutory violations.

## **RULE 193.7 NOTICE**

110.    Pursuant to Rule 193.7 of the TEXAS RULES OF CIVIL PROCEDURE, HKI hereby gives actual notice to Defendants that any and all documents produced in discovery in this suit and previously produced in the McDonald's Lawsuit or any other litigation pertaining to similar underlying facts, may be used against Defendants at any pretrial proceeding and/or at the trial of this matter without the necessity of authenticating the documents.[7]

## **JURY TRIAL**

111.    HKI requests a jury trial and will tender the applicable jury fee.

---

[7] *See* TEX. R. CIV. P. 193.7.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff H&K International, Inc. prays that this Court grant judgment in its favor against Defendants F&M Installations Corp., H&S Installations Corp., Selective Insurance Company of America, and ACE American Insurance Company and award HKI:

     a.     Actual damages (direct, indirect, and consequential);

     b.     Statutory damages and interest;

     c.     Punitive and Exemplary damages;

     d.     Pre-judgment and post-judgment interest;

     e.     Attorneys' fees and costs of suit; and

     f.     All such other relief to which it may justly be entitled.

H&K International, Inc. further prays that this Court grant judgment in its favor against KGK Management, Inc. and declare that:

     a.     HKI is not liable for any incidental and/or consequential damages including loss of profits;

     b.     HKI is not responsible for mechanical and electrical connections of equipment; and

     c.     HKI is not liable for damage caused by the service mistakes of third parties;

     d.     Attorneys' fees and costs of suit; and

     e.     All such other relief to which it may justly be entitled.

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/ Justin K. Ratley*
    Justin K. Ratley
    State Bar No. 24093011
    jratley@munsch.com
    700 Milam Street, Suite 800
    Houston, Texas 77002
    Caitlin W. Roberts
    State Bar No. 24102942
    croberts@munsch.com
    500 N. Akard Street, Suite 3800
    Dallas, Texas  75201
    (713) 222-1470 (telephone)
    (713) 222-1475 (facsimile)

**ATTORNEYS FOR PLAINTIFF**

4893-5637-7645v.6

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Heather  Valentine on behalf of Justin Ratley
Bar No. 24093011
hvalentine@munsch.com
Envelope ID: 67141517
Status as of 8/16/2022 11:12 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
| --- | --- | --- | --- | --- |
| Heather Valentine | | hvalentine@munsch.com | 8/10/2022 11:42:49 AM | SENT |
| Justin Ratley | | jratley@munsch.com | 8/10/2022 11:42:49 AM | SENT |
| Caitlin Roberts | | CRoberts@munsch.com | 8/10/2022 11:42:49 AM | SENT |