**EXHIBIT**

**A-3**

| | |
|---|---|
| **From:** | Ratley, Justin |
| **To:** | "Dominic.Vari@Chubb.com" |
| **Cc:** | "Dallavo, Christophe J" |
| **Bcc:** | "Valentine, Heather" |
| **Subject:** | McDonalds et al v. H&K International - Chubb #KY19K2037321 |
| **Date:** | Wednesday, June 8, 2022 7:06:05 PM |
| **Attachments:** | 2022-05-27 - Original Complaint against HK Intl Inc.pdf |

Dominic,

We received the attached Complaint today against HKI.

Thank you,
Justin



# Notice of Service of Process

**null / ALL**
**Transmittal Number: 25011482**
**Date Processed: 06/03/2022**

| | |
|---|---|
| **Primary Contact:** | Michael Curley<br>H & K International, Inc.<br>2200 Skyline Dr<br>Mesquite, TX 75149-1957 |

| | |
|---|---|
| **Entity:** | H & K International Inc.<br>Entity ID Number  3386679 |
| **Entity Served:** | H&K International, Inc. |
| **Title of Action:** | Brs Inurance Company vs. Prairie Contractors, Inc |
| **Matter Name/ID:** | Brs Inurance Company vs. Prairie Contractors, Inc (12391465) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Kane County Circuit Court, IL |
| **Case/Reference No:** | 2022-LA-000211 |
| **Jurisdiction Served:** | Texas |
| **Date Served on CSC:** | 05/27/2022 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | A&G Law, LLC<br>312-341-3900 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

KS
5/27/22

**This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.**

| STATE OF ILLINOIS, CIRCUIT COURT | **SUMMONS** | *For Court Use Only* |
|---|---|---|

Kane COUNTY

*Theresa J. Barreiro*
Clerk of the Circuit Court
Kane County, Illinois
5/25/2022

**FILED/IMAGED**

**Instructions ▼**

Enter above the county name where the case was filed.

Enter your name as Plaintiff/Petitioner.

Enter the names of all people you are suing as Defendants/Respondents.

Enter the Case Number given by the Circuit Clerk.

BRS INSURANCE CO. & McDONALD'S CORPORATION
**Plaintiff / Petitioner** *(First, middle, last name)*

v.   PRAIRIE CONTRACTORS, INC.; H&K DALLAS, INC.; H&K INTERNATIONAL, INC.; F&M INSTALLATION; and H&S INSTALLATIONS
**Defendant / Respondent** *(First, middle, last name)*

☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)*

**2022-LA-000211**

**Case Number**

**IMPORTANT INFORMATION:**

There may be court fees to start or respond to a case. If you are unable to pay your court fees, you can apply for a fee waiver. You can find the fee waiver application at: illinoiscourts.gov/documents-and-forms/approved-forms/.

E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit illinoislegalaid.org.

Call or text Illinois Court Help at 833-411-1121 for information about how to go to court including how to fill out and file forms. You can also get free legal information and legal referrals at illinoislegalaid.org.

**Plaintiff/Petitioner:**

Do not use this form in an eviction, small claims, detinue, divorce, or replevin case. Use the *Eviction Summons, Small Claims Summons, or Summons Petition for Dissolution of Marriage / Civil Union* available at illinoiscourts.gov/documents-and-forms/approved-forms. If your case is a detinue or replevin, visit illinoislegalaid.org for help.

If you are suing more than 1 Defendant/Respondent, fill out a *Summons* form for each Defendant/Respondent.

In **1a**, enter the name and address of a Defendant/Respondent. If you are serving a Registered Agent, include the Registered Agent's name and address here.

**1.   Defendant/Respondent's address and service information:**

a.   Defendant/Respondent's primary address/information for service:
Name *(First, Middle, Last):*   H&K International, Inc.
Registered Agent's name, if any: Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company
Street Address, Unit #:   211 E. 7th Street, Suite 620
City, State, ZIP:   Austin, TX 78701 USA
Telephone: _____   Email: _____

In **1b**, enter a second address for Defendant/Respondent, if you have one.

b.   If you have more than one address where Defendant/Respondent might be found, list that here:
Name *(First, Middle, Last):* _____
Street Address, Unit #: _____
City, State, ZIP: _____
Telephone: _____   Email: _____

In **1c**, check how you are sending your documents to Defendant/Respondent.

c.   Method of service on Defendant/Respondent:
☐ Sheriff            ☐ Sheriff outside Illinois: _____
                                                    *County & State*
☑ Special process server      ☐ Licensed private detective

SU-S 1503.2                Page 1 of 4                (06/21)

Enter the Case Number given by the Circuit Clerk: _____

<table>
<tr><td>

In **2**, enter the amount of money owed to you.

In **3**, enter your complete address, telephone number, and email address, if you have one.

</td><td>

**2.** **Information about the lawsuit:**

Amount claimed:   $ 1,507,383.06

**3.** **Contact information for the Plaintiff/Petitioner:**

Name *(First, Middle, Last):*   A&G LAW LLC

Street Address, Unit #:   542 S. Dearborn St. 10th Floor

City, State, ZIP:   Chicago, IL 60605

Telephone:   (312) 348-7629          Email:   randalman@aandglaw.com

</td></tr>
</table>

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

| **Important information for the person getting this form** | You have been sued. Read all of the documents attached to this *Summons*. To participate in the case, you must follow the instructions listed below. If you do not, the court may decide the case without hearing from you and you could lose the case. *Appearance* and *Answer/Response* forms can be found at: illinoiscourts.gov/documents-and-forms/approved-forms/. |
|---|---|

<table>
<tr><td>

Check **4a** or **4b**. If Defendant/Respondent only needs to file an *Appearance* and *Answer/Response* within 30 days, check box **4a**. Otherwise, if the clerk gives you a court date, check box **4b**.

</td><td>

**4.** **Instructions for person receiving this *Summons* (Defendant):**

☑ a.  To respond to this *Summons,* you must file *Appearance* and *Answer/Response* forms with the court within 30 days after you have been served (*not counting the day of service)* by e-filing or at:

Address:   540 South Randall Road

City, State, ZIP:   St. Charles, Illinois 60174

</td></tr>
<tr><td>

In **4a**, fill out the address of the court building where the Defendant may file or e-file their *Appearance* and *Answer/ Response.*

</td><td>

☐ b.  Attend court:

On: _____  at _____  ☐ a.m. ☐ p.m. in _____
    *Date*          *Time*              *Courtroom*

**In-person at:**

_____
*Courthouse Address*     *City*     *State*     *ZIP*
OR

</td></tr>
<tr><td>

In **4b**, fill out:
- The court date and time the clerk gave you.
- The courtroom and address of the court building.
- The call-in or video information for remote appearances (if applicable).
- The clerk's phone number and website. All of this information is available from the Circuit Clerk.

</td><td>

**Remotely** (You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance"):

By telephone: _____
           *Call-in number for telephone remote appearance*

By video conference: _____
              *Video conference website*

_____
*Video conference log-in information (meeting ID, password, etc.)*

</td></tr>
</table>

IN-PERSON COURT APPEARANCE MAY NOT BE NECESSARY. _____ or visit their website
                                              *Circuit Clerk's phone number*

Please go to https://www.illinois16thjudicialcircuit.org . _____ to find out more about how to do this.
                      *Website*

click on Attend a Remote Hearing link, then click Join Hearing on the line of courtroom

to determine if your appearance in court is necessary at this time.

| STOP! The Circuit Clerk will fill in this section. | Witness this Date:   5/25/2022                   *Seal of Court* <br><br> Clerk of the Court: *(signature)* |
|---|---|

| STOP! The officer or process server will fill in the Date of Service. | **This *Summons* must be served within 30 days of the witness date.** <br><br> Date of Service: _____ <br> *(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant or other person.)* |
|---|---|

**This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.**

| | | |
|---|---|---|
| **STATE OF ILLINOIS, CIRCUIT COURT**<br><br>Kane_____ COUNTY | **PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION** | *For Court Use Only* |

| | |
|---|---|
| **Instructions** | |
| Enter above the county name where the case was filed. | BRS INSURANCE CO. & McDONALD'S CORPORATION<br>**Plaintiff / Petitioner** *(First, middle, last name)* |
| Enter your name as Plaintiff/Petitioner. | |
| Enter the names of all people you are suing as Defendants/ Respondents. | v.  PRAIRIE CONTRACTORS, INC.; H&K DALLAS, INC.; H&K INTERNATIONAL, INC.; F&M INSTALLATION; and H&S INSTALLATIONS |
| Enter the Case Number given by the Circuit Clerk. | **Defendant / Respondent** *(First, middle, last name)*<br><br>☐ **Alias Summons** *(Check this box if this is not the 1ˢᵗ Summons issued for this Defendant.)* |

**Case Number**

**\*\*Stop. Do not complete the form. The sheriff or special process server will fill in the form.\*\***

My name is _____ and I state
   *First, Middle, Last*

☐ I served the *Summons* and Complaint/Petition on the Defendant/Respondent

_____ as follows:
*First, Middle, Last*

   ☐ Personally on the Defendant/Respondent:
   Male  ☐ Female  ☐ Non-Binary  ☐  Approx. Age: _____ Race: _____
   On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address, Unit#: _____
   City, State, ZIP: _____

   ☐ On someone else at the Defendant/Respondent's home who is at least 13 years old and is a family member or lives there:
   On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address, Unit#: _____
   City, State, ZIP: _____
   And left it with: _____
                 *First, Middle, Last*
   Male  ☐ Female  ☐ Non-Binary  ☐  Approx. Age: _____ Race: _____
   and by sending a copy to this defendant in a postage-paid, sealed envelope to the
   above address on _____ , 20 _____ .
   ☐ On the Corporation's agent, _____
                            *First, Middle, Last*
   Male  ☐ Female  ☐ Non-Binary  ☐  Approx. Age: _____ Race: _____
   On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____

Enter the Case Number given by the Circuit Clerk: _____

☐ **I was not able to serve the *Summons* and Complaint/Petition on Defendant/Respondent:**

_____
*First, Middle, Last*

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

1. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

2. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

3. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

| | |
|---|---|
| **DO NOT** complete this section. The sheriff or private process server will complete it. | **If you are a special process server, sheriff outside Illinois, or licensed private detective, your signature certifies that everything on the *Proof of Service of Summons* is true and correct to the best of your knowledge. You understand that making a false statement on this form could be perjury.** |

**By:** _____

Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

*Signature by:*
☐ Sheriff
☐ Sheriff outside Illinois: _____
_____
*County and State*
☐ Special process server
☐ Licensed private detective

**FEES**
Service and Return: $ _____
Miles _____ $ _____
Total _____ $ 0.00

_____
*Print Name*

If *Summons* is served by licensed private detective or private detective agency:
License Number: _____

Kane County Circuit Court    THERESA E. BARREIRO    ACCEPTED: 5/26/2022 10:53 AM    By: CM

Env #
Clerk of the Circuit Court
Kane County, Illinois
5/23/2022 12:42 PM
**FILED/IMAGED**

## IN THE CIRCUIT COURT OF THE SIXTEENTH JUDICIAL CIRCUIT
## KANE COUNTY, ILLINOIS, LAW DIVISION

BRS INURANCE COMPANY, on its own  )
behalf and as subrogee of McDONALD'S  )
CORPORATION; and McDONALD'S  )
CORPORATION,  )
        )
    Plaintiffs,  )
        )
    v.  )
        )
PRAIRIE CONTRACTORS, INC.; H&K  )
DALLAS, INC.; H&K INTERNATIONAL,  )
INC.; F&M INSTALLATION; and H&S  )
INSTALLATIONS,  )
        )
    Defendants.  )
        )

Case No. 2022-LA-000211

**JURY DEMANDED**

## COMPLAINT AT LAW

1.    Plaintiffs BRS Insurance Company, on its own behalf and as subrogee of McDonald's Corporation, and McDonald's Corporation, by and through their undersigned attorneys, hereby file this Complaint at Law against Prairie Contractors, Inc., H&K Dallas, Inc., H&K International, Inc., F&M Installation, and H&S Installations.

2.    This dispute arises out of a fire at a McDonald's restaurant under renovation. The fire was caused by a spark from welding during installation of a vent hood. The fire and the extent of the damage caused by it resulted from an unsafe work site and unsafe work practices including failure to comply with applicable safety protocols and OSHA standards for hot work such as welding. As a result of the fire, McDonald's Corporation suffered extensive damages including the catastrophic destruction and loss of the restaurant.

NOTICE
BY ORDER OF THE COURT THIS CASE IS HEREBY SET FOR
CASE MANAGEMENT CONFERENCE ON THE DATE BELOW.
FAILURE TO APPEAR MAY RESULT IN THE CASE BEING
DISMISSED OR AN ORDER OF DEFAULT BEING ENTERED.

Judge: Pheanis, Mark A
8/10/2022 9:00 AM

3.     This Complaint seeks relief against the general contractor overseeing the work site, the equipment manufacturer responsible for the sale and installation of the vent hood, and the subcontractors associated with the welding and installation of the vent hood.

## THE PARTIES

4.     McDonald's Corporation ("McDonald's") is a Delaware corporation with its principal address at 110 North Carpenter Street in Chicago, Illinois. At all times relevant herein, McDonald's owned a restaurant located at 1023 North Lake Street in Aurora, Illinois (the "Restaurant").

5.     Plaintiff BRS Insurance Company ("BRS") is an insurer registered and licensed in the state of Arizona. BRS is a wholly owned subsidiary of McDonald's USA, LLC ("McD USA"). McD USA is in turn a subsidiary of McDonald's. At all times relevant herein, McDonald's was insured by a policy of insurance issued by Zurich American Insurance Company ("Zurich"), which policy was in turn insured from the first dollar by a reinsurance agreement between Zurich and BRS.

6.     Prairie Contractors, Inc. ("Prairie") is an Illinois corporation with its principal address at 9318 Gulfstream Road in Frankfort, Illinois. Prairie was the General Contractor for the renovation of the Restaurant.

7.     H&K Dallas, Inc. ("H&K Dallas") contracted to be an approved supplier for certain equipment, including vent hoods, permitted to be installed in McDonald's restaurants. H&K International, Inc. ("H&K International") is an affiliate of H&K Dallas and so is defined as a party to H&K Dallas's contract, as further alleged below. H&K International contracted to provide and install the vent hood being welded at the time of the fire. H&K Dallas and H&K International

2

(collectively, "H&K") have their principal address at 2200 Skyline Drive in Mesquite, Texas. H&K International also has an office at 2176 West Diehl Road in Aurora, Illinois.

8.     F&M Installation ("F&M") and H&S Installations ("H&S") are domestic Illinois corporations in good standing. Both F&M and H&S have their principal address at 7320 Iris Avenue in Hanover Park, Illinois. That address is a single-family home. H&K International contracted with F&M to install the vent hood being welded at the time of the fire. H&S, acting as the alter-ego, agent or subcontractor of F&M, sent an employee of H&S to perform the welding on the vent hood at the time of the fire.

## JURISDICTION AND VENUE

9.     This Court has personal jurisdiction over Defendant Prairie and subject matter jurisdiction over these claims against it, because Prairie is a corporation organized under the laws of Illinois and the work site and fire from which the claims against Prairie arise are located in the state of Illinois.

10.     This Court has personal jurisdiction over Defendant H&K Dallas and subject matter jurisdiction over these claims against it because H&K Dallas agreed by written contract that it "submits and will cause all company affiliates to submit to the…jurisdiction of the…state courts of Illinois in connection with all suits, actions, proceedings or other disputes related to" the agreement governing its status as an approved supplier for McDonald's, any other agreement with McDonald's or its affiliates relating to that subject matter, or its business relationship with McDonald's.

11.     This Court has personal jurisdiction over Defendant H&K International and subject matter jurisdiction over these claims against it by virtue of: (1) H&K Dallas' written agreement wherein H & K agreed that it will cause H&K International, as an affiliate of H&K Dallas, to

3

submit to the jurisdiction of the state courts of Illinois; (2) the fact that (i) H&K International regularly conducts business in the state of Illinois including maintaining an office in the state of Illinois; (ii) H&K International contracted for the sale and installation of the vent hood being welded at the time of the fire in the state of Illinois; and (iii) the installation and resultant fire from which the claims against H&K International arise took place in Illinois.

12.     This Court has personal jurisdiction over Defendants F&M and H&S and subject matter jurisdiction over these claims against them, because F&M and H&S are each corporations organized under the laws of Illinois and all of the events and work done by F&M and/or H&S that resulted in the fire from which the claims against them arise took place in the state of Illinois.

13.     This Court is a proper venue for this dispute pursuant to 735 ILCS 5/2-101, because H&K International has an office in Kane County. Additionally, the restaurant under renovation and where the fire occurred was located in Kane County, so that each of the Defendants was doing business in this county, and the fire from which each of these causes of action arose took place in this county.

## FACTUAL ALLEGATIONS

**A.      Prairie Contracted to Perform the Renovation, Ensure the Safety of the Project, and Indemnify BRS for Any Losses**

14.     Prairie was the general contractor for the renovation of the Restaurant.

15.     Prairie's work was governed by, *inter alia*, a December 14, 2014, Master Agreement for Construction Services ("Master Agreement") between Prairie and McD USA, and an August 20, 2018, Project Authorization Order ("PAO") between Prairie and McD USA.

16.     The Master Agreement set forth the rights and obligations of each party with respect to any projects for which Prairie was retained. The PAO, which applied specifically to the renovation of the Restaurant, incorporated the terms of the more general Master Agreement.

4

17.    The Master Agreement assigned responsibility for the renovation of the Restaurant to Prairie. It provided:

(a)    "[Prairie] acknowledges that McDonald's is relying on [Prairie's] skills and integrity to produce a completed, operational Project suitable for McDonald's intended purposes. Unless otherwise provided in the Contract Documents, [Prairie] will provide and pay for all labor, materials, equipment...and other facilities or services necessary for proper execution and completion of the Work...." §3.1.2;

(b)    Prairie will "provide sufficient...management to carry out the requirements of each Project Authorization order in a[]...manner consistent with the best interests of McDonald's" and "enforce strict discipline and good order among [Prairie's] employees and other persons carrying out the Work." §3.3; and

(c)    Prairie "will be solely responsible for and have control over construction means, methods, techniques, sequences and procedures..." and "will be responsible to McDonald's for the acts and omissions of all Subcontractors and their agents and employees, and all other persons performing or supplying the Work." §3.4.

18.    The Master Agreement defined the applicable "Work" as "the tasks, collectively, which [Prairie] is engaged by McDonald's to perform, pursuant to and as described in the Contract Documents." §1.1. The PAO defined the "Project" at issue as "Renovation" of the Restaurant in accordance with identified plans and specifications. In those plans and specifications, the Scope of Work included "New Kitchen Equipment" and the Drawings referenced included "Exhaust Hoods" and "Hood Details."

19.    The Master Agreement provided that in conducting the renovation Prairie was required to comply with applicable laws, including OSHA requirements. It stated that all services

"will be performed in conformance with all Applicable Laws…," §3.2, and Prairie "will comply with all Applicable Laws concerning safety and health of workers and the public including, without limitation, the Occupational Safety and Health Act of 1970 ("OSHA")…," §3.10.

20.     The Master Agreement also held Prairie responsible for and required Prairie to ensure the safety of the Project, Work and jobsite. It stated:

(a)     Prairie "will be solely responsible for the conduct, safety and health of [Prairie's] employees and agents and those of the Subcontractors, as well as the public, in connection with the Work." §3.10;

(b)     Prairie "will develop and implement, maintain and enforce a safety program for the protection of persons and the Work…" §3.10;

(c)     "If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences or procedures, [Prairie] will evaluate jobsite safety and will be fully and solely responsible for the jobsite safety of such means, methods, techniques, sequences or procedures." §3.10; and

(d)     Prairie "will protect the Work and the Project site from damage and injury and [Prairie] will be solely responsible for protection of all property and the Work until Final Completion." §10.1.5.1.

21.     The Master Agreement provided for indemnification by Prairie of McD USA and its affiliates, including McDonald's and McD USA subsidiary BRS. It stated: "To the fullest extent permitted by law, [Prairie] will hold harmless…and indemnify [McD USA], [McDonald's], [McDonald's] subsidiaries, and all of their respective…affiliates…, from any and all costs, claims,…damages, settlements, liabilities, losses, attorney's fees, expert fees…and other costs and expenses including, without limitation,…damage to property, economic, direct, indirect or

consequential damages suffered by any person or persons and arising out of, in connection with, resulting from, or incidental to: (i) any actual or alleged acts, errors or omissions by [Prairie]…in connection with this Master Agreement or any Project Authorization Order…; [or] (iv) any actual or alleged breach by [Prairie] o[f] any of [Prairie's] representations, warranties and/or obligations in this Master Agreement[.]" §13.1.

22.    The Master Agreement further provided that "[s]hould either party employ an attorney or attorneys to enforce any of the provisions of this Master Agreement or to recover damages for the breach of this Master Agreement, the non-prevailing party will pay to the prevailing party all reasonable costs, damages and expenses including, without limitation, attorney's fees, expended or incurred in connection therewith, and any judgment entered in such enforcement action will include such amount as a specific line item." §17.7.

**B.     H&K Contracted to Provide and Install the Vent Hood Subject to the Terms of an Agreement Under Which it Warranted Workmanship, Agreed to Safety Provisions, and Indemnified McDonald's and BRS for Any Losses**

23.    Although McDonald's owned the Restaurant, the Restaurant was operated by Gloria Kazanova, Keith Kazanova, and Tomas Kazanova (collectively, the "Franchisee") pursuant to a Franchise Agreement and Lease with McDonald's.

24.    The Franchisee's agreements with McDonald's required that the Franchisee contract for the purchase and installation of certain equipment or fixtures for the Restaurant, including a vent hood for the renovation, from a supplier approved by McDonald's.

25.    The Franchisee contracted with H&K International for the purchase and installation of the vent hood used in the renovation of the Restaurant. In this transaction, H&K International undertook to install the vent hood at the Restaurant.

26.     The approved supplier relationship according to which H&K International was eligible to provide and install the vent hood was governed by the terms of a May 9, 2007, Business Relationship/Confidentiality Agreement ("BRCA") between H&K Dallas and McD USA.

27.     The BRCA defined the "Company" as H&K Dallas and "Company Affiliates" as "all direct or indirect subsidiaries and affiliates and all...agents, consultants, independent contractors, subcontractors, representatives or others acting on behalf of the Company and such direct or indirect subsidiaries and affiliates." §1(b). H&K International falls within this definition of "Company Affiliate" in the BRCA.

28.     The BRCA defined "McD USA Affiliates" to include "all direct or indirect subsidiaries and affiliates of McD USA and McDonald's Corporation...." §1(b). BRS is a subsidiary and affiliate of McD USA and falls within this definition of "McD USA Affiliate" in the BRCA.

29.     The BRCA provided that "McD USA [and] each McD USA Affiliate...are intended third party beneficiaries of this Agreement." §10. BRS is a McD USA Affiliate covered by this provision of the BRCA.

30.     The BRCA provided, *inter alia*, that if H&K Dallas or any Company Affiliate "is designated as an Approved Supplier for any Approved Product...[H&K Dallas] represents and warrants and will cause such Company Affiliate to represent and warrant that such Approved Product will...be free from defects in...workmanship...." §5(e)(3).

31.     The BRCA also provided that if H&K Dallas or any Company Affiliate "is designated as an Approved Supplier for any Approved Product, [H&K Dallas] agrees, represents and warrants and will cause such Company Affiliate to agree, represent and warrant that...they will strictly adhere to the current McDonald's Code of Conduct for Suppliers...." §5(f)(8).

8

McDonald's Supplier Code of Conduct, in turn, provided that "[s]uppliers shall ensure that all workers receive communication and training on emergency planning and safe work practices;" "suppliers shall have systems to prevent, detect and respond to potential risks to the safety, health and security of all employees;" and "[s]uppliers' business activities shall comply with applicable laws and regulations...."

32.     The BRCA provided for indemnification, stating that H&K Dallas "agrees and will cause Company Affiliates to agree, to...indemnify and hold harmless McD USA [and] the McD USA Affiliates...from and against any and all losses [or] claims...and any related...damages, amounts paid in settlement, and any other expenses, costs or fees...arising from or in any way related to a...Product, including but not limited to...(6) improper or defective...installation of an Approved Product; and (7) the actual or alleged breach by [H&K Dallas] or any Company Affiliates of any of its or their representations, warranties, obligations, undertakings, agreements and covenants given under or pursuant to this Agreement...." §7(a).

**C.      H&K International Contracted with F&M to Install the Vent Hood**

33.     H&K International designated Fabian Serrato as its installer for the vent hood at the Restaurant.

34.     Mr. Serrato was retained to perform this installation subject to the terms of an October 29, 2014, Trade/Sub Contractor Standards & Agreement ("Trade Agreement") between H&K International and F&M. Mr. Serrato signed the Trade Agreement as agent for F&M.

35.     The Trade Agreement defined the "Trade Contractor" as "[t]he Trade Contractor's organization or any representative who is assigned the authority to perform the specified task." §14(d).

9

36.    In the Trade Agreement Preamble, F&M agreed that "[t]he work of the Trade/Sub Contractor is expected to be performed in a good and workmanlike manner. ..."

37.    The Trade Agreement further provided that F&M "shall warrant all work performed...," including "[a] warranty that the work will be performed in a proper and workmanlike manner...." §3(a), (c).

38.    F&M agreed in the Trade Agreement to take safety measures, including:

(a)    "[a]ll subcontractors and their employees shall, at a minimum, comply with all applicable laws, codes, rules, regulations and requirements pertaining to the performance of its work, including the Federal Occupational Safety and Health Act (OSHA)," §4(a);

(b)    "[p]rior to performing any work activities, the subcontractor shall evaluate the safety of the work in place and the working conditions in the area in which its employees and the subcontractors will work and will notify H&K in writing of any unsafe work conditions or defective work in place," §4(b);

(c)    [i]t shall be the subcontractor's responsibility to furnish and pay for special...equipment...necessary to comply with OSHA standards or other agency regulations that pertain to the work," §4(c); and

(d)    "[t]he Trade Contractors shall provide adequate protection for all adjoining and adjacent building elements." §8(a).

39.    The Trade Agreement also provided that "[a]ny damage or loss to equipment or any building elements sustained as a result of the Trade Contractor or their Sub-Contractor's work shall be repaired/replaced to the Owners satisfaction without cost to the Client." §8(a).

40.     The Trade Agreement explicitly referred to benefits to be conferred upon McDonald's in several instances. It provided that materials must be of "an approved McDonald's standard," shall be used in strict accordance with McDonald's instructions and may be subject to McDonald's inspections. §11. The Trade Agreement required examination of McDonald's requirements. §13(1). It ultimately provided that "[t]he definition of successful performance or the threshold for successful performance is that equipment is installed and working per McDonald's standards." §15(c).

**D.      H&S and F&M Performed Welding Work to Install the Vent Hood**

41.     F&M and H&S share an address, which is a single-family home.

42.     On information and belief, F&M and H&S are owned by the same two people: Fabian Serrato and Michael Hall. Mr. Serrato is the president and secretary of record for H&S; Mr. Hall is president and secretary of record for F&M.

43.     F&M and H&S do not observe corporate formalities between them and the two entities are used interchangeably by Mr. Serrato and Mr. Hall. Thus, Mr. Serrato signed the Trade Agreement as the agent of F&M even though Mr. Hall is the nominal president and secretary of F&M. At a site inspection related to the incident alleged here, both Mr. Serrato and Mr. Hall identified themselves as representatives of both F&M and H&S.

44.     On January 17, 2019, Ivan Villapando conducted the welding work in order to install the vent hood per the Franchisee's contract with H&K International. Mr. Villapando was employed by H&S though H&K International's contract had been with F&M.

45.     F&M and H&S were, for all intents and purposes, one and the same so that corporate distinctions between them should be disregarded.

46.    Alternatively, F&M either had a subcontract with H&S or otherwise sent Mr. Villapando as its agent to install the vent hood at the Restaurant.

**E.    Defendants Failed to Meet and Maintain Safety Standards for Welding Resulting in a Fire that Destroyed the Restaurant**

47.    As Mr. Villapando was welding a pipe from the vent hood system for the grill to the exhaust fan in the space above the ceiling and below the roof, a spark from his welding work travelled to nearby partially exposed insulation. The partially exposed insulation had been part of the original pre-renovation structure.

48.    The exposed insulation ignited. The fire then spread to the unexposed insulation and throughout the unexposed void above the ceiling.

49.    Prairie's superintendent, Alex Perez, was present at the Restaurant but not in the vicinity of the welding work at the time of the fire.

50.    When Mr. Perez heard someone yell fire and went to the vicinity of the fire, the fire was already burning in the void above the ceiling.

51.    Mr. Perez and other workers tried to extinguish the fire using buckets of water. Either no fire extinguisher was on the work site, none was available near the fire, or Mr. Perez and the other workers disregarded the fire extinguisher. A fire extinguisher was required rather than water, because the cause of the fire spreading was grease or other flammable substances and water would not extinguish such a fire. The presence of such substances would be natural and expected in the kitchen of a McDonald's restaurant in and around the ceiling over the cooking equipment. Additionally, the magnitude of the fire was so extensive that by the time these efforts began, buckets of water would not, in any case, have been adequate to extinguish the fire.

52.    When the fire could not be extinguished with water, Mr. Perez ordered everyone out of the Restaurant and called 911.

53.     Safety standards and requirements, including but not limited to OSHA standards, apply to welding work. These standards include, but are not limited to, requirements that: no welding should take place before fire hazards, including flammable compounds, are either removed from the area or protected from welding sparks; fire extinguishing equipment be immediately available in the welding work area and in a state of readiness for instant use; and additional specifically trained personnel guard against fire during and for a sufficient period of time after welding to ensure that no possibility of fire exists.

54.     However, minimum safety standards and requirements for welding work were not being met or maintained at the time of the fire.

55.     The partially exposed insulation that was part of the pre-renovation structure and which was ignited by the welding spark would have been expected to, and on information and belief did, contain grease or other flammable substances consistent with build-up over time from kitchen exhaust. This pre-existing insulation was neither removed nor protected from welding sparks at the time of the fire.

56.     There was no fire extinguishing equipment immediately available and in a state of readiness for instant use in the area of the welding work at the time of the fire.

57.     Trained personnel were not assigned to watch and were not watching the unprotected pre-existing insulation during or for a sufficient period of time after the welding of the vent hood to ensure that no fire existed.

58.     The failure to meet and maintain safety standards for welding work both resulted in the initial fire and increased the magnitude of the fire.

59.     Because of the failure to refrain from welding in the presence of the exposed pre-existing insulation, remove the insulation or protect the insulation from welding sparks, the

insulation ignited when it came into contact with the welding spark. Because of the failure to have fire extinguishing equipment immediately available and in a state of readiness and to have personnel watching for fire after welding, the fire spread.

60.     The fire ultimately resulted in the collapse of the roof into the building, causing a catastrophic loss.

**E.     BRS Reinsured and Paid for McDonald's Damages**

61.     McDonald's damages and expenses due to the fire to date amount to $1,507,383.06.

62.     At all relevant times McDonald's was the named insured on a policy of insurance issued by Zurich.

63.     The Zurich policy was, in turn, insured from the first dollar by a reinsurance agreement between Zurich and BRS.

64.     Pursuant to the terms of the Zurich policy, Zurich has caused McDonald's to be paid $1,504,883.06 to date, an amount equal to McDonald's damages sustained as a result of the fire less a $2,500 deductible. McDonald's was responsible for the $2,500 deductible. Pursuant to the agreement between Zurich and BRS, BRS has fully reimbursed Zurich for this amount.

65.     The Zurich policy provided for Zurich to have subrogation rights to the extent it paid any claim. However, in light of the fact that the loss was passed through to BRS pursuant to its reinsurance agreement with Zurich, Zurich has assigned any subrogation rights to BRS for this claim, BRS is thus subrogated to the rights of McDonald's to bring the actions set forth herein.

## CAUSES OF ACTION

### Count I – Negligence
### (against H&S by BRS as subrogee of McDonald's and McDonald's)

66.     Plaintiffs re-allege the allegations of paragraphs 1-65 as if fully set forth herein.

14

67.     H&S, as a contractor performing construction services at a restaurant owned by McDonald's, owed a duty to McDonald's to perform those services with reasonable care.

68.     H&S breached its duty to perform welding with reasonable care by failing to observe minimum safety standards and regulations relating to welding, including but not limited to by:

(a)     welding in the presence of flammable compounds;

(b)     failing to remove flammable compounds from the area of welding;

(c)     failing to protect flammable compounds from welding sparks;

(d)     failing to have fire extinguishing equipment immediately available in the area of welding work;

(e)     failing to have fire extinguishing equipment in a state of readiness for instant use in the area of welding work; and

(f)     failing to have trained personnel watching for fire during and for a sufficient period of time after welding.

69.     As a result of H&S's failure to maintain safety standards and regulations, a welding spark was able to ignite the exposed insulation and the resulting fire was able to spread, ultimately resulting in the collapse of the Restaurant and McDonald's total loss of the Restaurant.

WHEREFORE, BRS as subrogee of McDonald's and McDonald's pray that this Court enter a Judgment in their favor and against H&S in an amount to be determined by the Court, but not less than $1,507,383.06, and such other relief as the Court deems just and proper.

### Count II – Negligence
### (against F&M by BRS as subrogee of McDonald's and McDonald's)

70.     Plaintiffs re-allege the allegations of paragraphs 1-69 as if fully set forth herein.

71.     F&M was retained by H&K International to install the vent hood at the Restaurant. Although the individual conducting the welding work at the time of the fire was an employee of H&S, as alleged in detail above, F&M and H&S are one and the same such that corporate distinctions between them should be disregarded. As a contractor performing construction services at a restaurant owned by McDonald's, F&M owed a duty to McDonald's to perform its services with reasonable care.

72.     In the alternative, F&M entered into a subcontract or other agency relationship with H&S to conduct welding to install the vent hood at the Restaurant, pursuant to which F&M had a duty to exercise supervisory control over H&S with reasonable care.

73.     F&M also assumed, in its Trade Agreement with H&K International, additional duties that it was obligated to perform with reasonable care. Specifically, F&M assumed duties to:

(a)     perform its work in a good and workmanlike manner;

(b)     warrant all work performed, including warranting that work is performed in a proper and workmanlike manner;

(c)     comply with all applicable laws, codes, rules, regulations and requirements (including OSHA requirements) pertaining to the performance of its work;

(d)     evaluate the safety of working conditions;

(e)     furnish and pay for special equipment necessary to comply with regulations, including OSHA standards, pertaining to the work;

(f)     provide adequate protection for adjoining and adjacent building elements;

(g)     repair and/or replace any damage to any building elements sustained as a result of its work or the work of its representative.

74.     The duties created by the Trade Agreement were intended to benefit McDonald's. The contracted-for work took place in the Restaurant owned by McDonald's. Additionally, as alleged above, the Trade Agreement explicitly requires compliance with McDonald's standards, instructions and requirements. The Trade Agreement also provides that "[t]he definition of successful performance or the threshold for successful performance is that equipment is installed and working per McDonald's standards."

75.     F&M breached each of these duties to McDonald's by failing to observe, and failing to take any steps to ensure that H&S observed, minimum safety standards and regulations relating to welding including but not limited to OSHA regulations, including but limited to, by:

(a)     welding in the presence of flammable compounds;

(b)     failing to remove flammable compounds from the area of welding;

(c)     failing to protect flammable compounds from welding sparks;

(d)     failing to have fire extinguishing equipment immediately available in the area of welding work;

(e)     failing to have fire extinguishing equipment in a state of readiness for instant use in the area of welding work; and

(f)     failing to have trained personnel watching for fire during and for a sufficient period of time after welding.

76.     As a result of F&M's breaches of its duties, a welding spark was able to ignite the exposed insulation and the resulting fire was able to spread, ultimately resulting in the collapse of the roof and McDonald's total loss of the Restaurant.

17

WHEREFORE, BRS as subrogee of McDonald's and McDonald's pray that this Court enter a Judgment in their favor and against F&M in an amount to be determined by the Court, but not less than $1,507,383.06, and such other relief as the Court deems just and proper.

<u>**Count III – Breach of Contract**</u>
**(against F&M by BRS as subrogee of McDonald's and McDonald's)**

77.     Plaintiffs re-allege the allegations of paragraphs 1-76 as if fully set forth herein.

78.     As set forth in detail above, F&M contracted to install the vent hood at the Restaurant pursuant to the terms of the Trade Agreement, under which F&M was obligated to:

(a)     perform its work in a good and workmanlike manner;

(b)     warrant all work performed, including warranting that work is performed in a proper and workmanlike manner;

(c)     comply with all applicable laws, codes, rules, regulations and requirements (including OSHA requirements) pertaining to the performance of its work;

(d)     evaluate the safety of working conditions;

(e)     furnish and pay for special equipment necessary to comply with regulations, including OSHA standards, pertaining to the work;

(f)     provide adequate protection for adjoining and adjacent building elements; and

(g)     repair and/or replace any damage to any building elements sustained as a result of its work or the work of its representative.

79.     McDonald's was an intended third-party beneficiary of the Trade Agreement, as reflected by the circumstances and terms of the Trade Agreement, including but not limited to provisions requiring compliance with McDonald's standards, instructions and requirements and a provision that "[t]he definition of successful performance or the threshold for successful performance is that equipment is installed and working per McDonald's standards."

18

80.     F&M failed to meet its obligations to install the vent hood in a workmanlike manner, to comply with applicable laws and regulations and to evaluate the safety of working conditions by failing to maintain safety standards and regulations relating to welding as set forth above.

81.     F&M failed to meet its obligation to furnish special equipment necessary to comply with regulations, including OSHA standards, including by failing to furnish fire extinguishing equipment in the vicinity of the welding work.

82.     F&M failed to meet its obligation to provide adequate protection for adjoining and adjacent building elements, including but not limited to by failing to meet safety standards requiring the removal or protection of flammable compounds before performing welding, failing to have fire extinguishing equipment in a state of readiness for instant use in the area of welding work, and failing to have personnel watching for fire during and for a sufficient period of time after welding.

83.     F&M also failed to meet its obligation to repair and/or replace any damage to building elements sustained as a result of its work, in that it has not repaired or replaced any of the damage caused by the fire.

84.     As a result of F&M's breaches of the Trade Agreement, a welding spark was able to ignite the exposed insulation and the resulting fire was able to spread, ultimately resulting in the collapse of the roof and McDonald's total loss of the Restaurant.

WHEREFORE, BRS as subrogree of McDonald's and McDonald's pray that this Court enter a Judgment in their favor and against F&M in an amount to be determined by the Court, but not less than $1,507,383.06, plus pre-judgment interest, and such other relief as the Court deems just and proper.

**Count IV – Negligence**
**(against H&K International by BRS as subrogree of McDonald's and McDonald's)**

85.     Plaintiffs re-allege the allegations of paragraphs 1-84 as if fully set forth herein.

86.     H&K International undertook to install the vent hood at the Restaurant. As such, H&K International owed a duty to McDonald's to perform those services with reasonable care.

87.     H&K International also had, at a minimum, a duty to McDonald's to exercise supervisory control over subcontractor(s) providing work with reasonable care.

88.     H&K International breached both of these duties by failing to observe, and failing to take any steps to ensure that F&M and H&S observed, minimum safety standards and regulations relating to welding, including but limited to, by:

(a)     welding in the presence of flammable compounds;

(b)     failing to remove flammable compounds from the area of welding;

(c)     failing to protect flammable compounds from welding sparks;

(d)     failing to have fire extinguishing equipment immediately available in the area of welding work;

(e)     failing to have fire extinguishing equipment in a state of readiness for instant use in the area of welding work; and

(f)     failing to have trained personnel watching for fire during and for a sufficient period of time after welding.

89.     As a result of H&K International's breaches of its duties, a welding spark was able to ignite the exposed insulation and the resulting fire was able to spread, ultimately resulting in the collapse of the roof and McDonald's total loss of the Restaurant.

20

WHEREFORE, BRS as subrogee of McDonald's and McDonald's pray that this Court enter a Judgment in their favor and against H&K International in an amount to be determined by the Court, but not less than $1,507,383.06, and such other relief as the Court deems just and proper.

<u>**Count V – Breach of Contract**</u>
**(against H&K Dallas by BRS as subrogee of McDonald's and McDonald's)**

90.     Plaintiffs re-allege the allegations of paragraphs 1-89 as if fully set forth herein.

91.     As set forth fully above, H&K Dallas entered into the BRCA with McD USA.

92.     The BRCA governs, *inter alia*, the relationship between the parties with regard to products designated by McDonald's as Approved Products for which H&K Dallas or its affiliates is an Approved Supplier.

93.     By the terms of the BRCA, H&K Dallas' obligations under the BRCA include causing H&K Dallas' affiliates, defined in the BRCA so as to include H&K International, to meet the same obligations as H&K Dallas.

94.     The vent hood being installed at the Restaurant at the time of the fire was an Approved Product, and H&K was an Approved Supplier, governed by the BRCA.

95.     By the terms of the BRCA, H&K Dallas warranted, and agreed to cause H&K International to warrant, that the vent hood would be free from defects in workmanship. H&K Dallas also agreed to strictly adhere, and to cause H&K International to strictly adhere, to McDonald's Code of Conduct, which included ensuring training on emergency planning and safe work practices for workers, having systems to prevent, detect and respond to safety risks, and complying with applicable laws and regulations.

96.     The BRCA provided that McDonald's is an intended third party beneficiary of the BRCA.

97.     McDonald's has met its obligations under the BRCA.

21

98.     H&K failed to meet its obligations to ensure that the installation of the vent hood was free from defects in workmanship. As set forth in detail above, the installation of the vent hood was defective and resulted in the initiation and spread of fire throughout the Restaurant.

99.     H&K failed to meet its contractual obligations to ensure that workers installing the vent hood received training on emergency planning and safe work practices and failed to have systems to prevent, detect and respond to safety risks.

100.    H&K further failed to meet its obligation to comply with applicable law and regulations, including OSHA standards relating to welding work. The installation of the vent hood with disregard for minimum safety standards and regulations for welding work, set forth in detail above, resulted in a fire that spread to consume much of the Restaurant.

101.    Thus, as a result of H&K's breaches of the BRCA, a welding spark was able to ignite the exposed insulation and the resulting fire was able to spread, ultimately resulting in the collapse of the roof and McDonald's total loss of the Restaurant.

WHEREFORE, BRS as subrogee of McDonald's and McDonald's pray that this Court enter a Judgment in their favor and against H&K Dallas in an amount to be determined by the Court, but not less than $1,507,383.06, plus pre-judgment interest, and such other relief as the Court deems just and proper.

**Count VI – Contractual Indemnification**
**(against H&K Dallas by BRS)**

102.    Plaintiff re-alleges the allegations of paragraphs 1-101 as if fully set forth herein.

103.    As set forth fully above, H&K Dallas entered into the BRCA with McD USA.

104.    The BRCA governs, *inter alia*, the relationship between the parties with regard to products designated by McDonald's as Approved Products for which H&K Dallas or its affiliates is an Approved Supplier.

105.     By the terms of the BRCA, H&K Dallas' obligations include causing H&K Dallas' affiliates, defined in the BRCA so as to include H&K International, to meet the same obligations as H&K Dallas.

106.     The vent hood being installed at the Restaurant at the time of the fire was an Approved Product, and H&K was an Approved Supplier, governed by the BRCA.

107.     As set forth above, under the terms of the BRCA, H&K Dallas is obligated to agree and to cause its affiliates, such as H&K International, to agree to indemnify and hold harmless "McD USA Affiliates," including BRS, from and against any and all losses or claims "arising from or in any way related to" a Product, including "improper or defective…installation of an Approved Product."

108.     Also under the terms of the BRCA, H&K Dallas is obligated to agree and to cause its affiliates, such as H&K International, to agree to indemnify and hold harmless "McD USA Affiliates," including BRS, from and against any and all losses or claims "arising from or in any way related to" a Product, including the actual or alleged breach by H&K Dallas or any of its affiliates, such as H&K International, of representations, warranties, obligations, undertakings, agreements or covenants within the BRCA.

109.     H&K Dallas is thus obligated to indemnify BRS from and against losses or claims arising from improper or defective installation of an Approved Product or arising from breaches by H&K Dallas of warranties and obligations in the BRCA.

110.     McD USA has met its obligations under the BRCA.

111.     As set forth above, BRS has paid McDonald's $1,504,883.06 for its losses and damages arising from the fire.

112. BRS was obligated to pay these amounts to Zurich, because McDonald's made a claim under its policy of insurance issued by Zurich which, in turn, was reinsured by BRS so that BRS was required to reimburse the claim.

113. As set forth in detail above, McDonald's incurred these losses as a result of the improper and defective installation of the vent hood and as a result of H&K Dallas' failure to meet its obligations and warranties in the BRCA.

114. The amounts paid by Zurich and reimbursed by BRS therefore constitute payments on a claim arising from improper or defective installation of an Approved Product and breaches by H&K Dallas of warranties and obligations in the BRCA, for which H&K Dallas must indemnify BRS.

WHEREFORE, BRS prays that this Court enter a Judgment in its favor and against H&K Dallas in an amount to be determined by the Court, but not less than $1,504,883.06, plus pre-judgment interest, and such other relief as the Court deems just and proper.

### Count VII – Contractual Indemnification
**(against Prairie by BRS and McDonald's)**

115. Plaintiff re-alleges the allegations of paragraphs 1-114 as if fully set forth herein.

116. Prairie was the General Contractor for the renovation of the Restaurant pursuant to the Master Agreement and PAO between Prairie and McD USA, the terms of which are described in detail above.

117. Under the Master Agreement, Prairie is obligated to indemnify BRS and McDonald's for claims and losses "arising out of, in connection with, resulting from, or incidental to" actual or alleged errors or omissions by Prairie in connection with the renovation of the Restaurant.

24

118.    Prairie is also obligated under the Master Agreement to indemnify BRS and McDonald's for claims and losses "arising out of, in connection with, resulting from, or incidental to" an actual or alleged breach by Prairie of any of its warranties or obligations under the Master Agreement.

119.    McD USA has performed its obligations with regard to the renovation of the Restaurant under the Master Agreement and PAO.

120.    As set forth above, BRS has paid McDonald's $1,504,883.06 for its losses and damages arising from the fire and McDonald's paid $2,500.00

121.    BRS was obligated to pay the amount it paid to Zurich because McDonald's made a claim under its policy of insurance issued by Zurich which, in turn, was reinsured by BRS so that BRS was required to reimburse the claim.

122.    BRS and McDonald's incurred the damages described in Paragraph 120 as a result of errors or omissions by Prairie in connection with the renovation of the Restaurant and due to breaches by Prairie of its obligations under the Master Agreement.

123.    Specifically, the Master Agreement assigned responsibility for the renovation of the Restaurant to Prairie, including obligating Prairie to provide labor and equipment necessary for proper execution of the work. The Master Agreement obligated Prairie to enforce discipline and order among persons carrying out the work and made Prairie solely responsible for all persons performing work on the renovation. The Master Agreement obligated Prairie to comply with all applicable laws, including OSHA. The Master Agreement also obligated Prairie to ensure the safety of the renovation and the jobsite, including by developing and maintaining a safety program for the protection of the work, evaluating jobsite safety, and protecting the work, site and property from damage.

124.    Prairie breached each of these obligations by:

(a)     failing to comply with applicable laws including OSHA standards relating to welding, including as set forth in detail above;

(b)     failing to provide fire extinguishing equipment in a state of readiness in the immediate vicinity of welding work;

(c)     failing to provide "fire watch" personnel for the welding work;

(d)     failing to otherwise provide for a safe jobsite relative to welding of the vent hood;

(e)     failing to require others, including the welders carrying out the work, to do the above; and

(f)     ultimately, failing to protect the renovation and the Restaurant from damage.

125.    The amounts paid by Zurich and reimbursed by BRS therefore constitute payments on a claim arising from errors and omissions by Prairie in connection with the renovation of the Restaurant and from breaches by Prairie of its obligations under the Master Agreement, for which Prairie must indemnify BRS. The same is true of the $2,500.00 paid directly by McDonald's.

WHEREFORE, BRS prays that this Court enter a judgment in its favor and against Prairie in an amount to be determined by the Court, but not less than $1,504,883.06, plus pre-judgment interest, costs, expenses, attorney's fees and such other relief as the Court deems just and proper. McDonald's prays that this Court enter a judgment in its favor and against Prairie in an amount to be determined by the Court, but not less than $2,500.00, plus pre-judgment interest, costs, expenses, attorney's fees and such other relief as the Court deems just and proper.

26

## **JURY DEMAND**

Plaintiff hereby demands trial by jury on all claims so triable.


Dated: May 23, 2022


Respectfully submitted,


**BRS INSURANCE COMPANY and
MCDONALD'S CORPORATION**

By: /s/ Robert M. Andalman
        One of their counsel


Robert M. Andalman (ARDC No. 6209454)
Alexis Hawker (ARDC No. 6272375)
Diana Guler (ARDC No. 6326990)
A&G Law, LLC
542 South Dearborn St., 10th Floor
Chicago, Illinois 60605
Telephone: (312) 341-3900
randalman@aandglaw.com
ahawker@aandglaw.com
dguler@aandglaw.com


27

Kane County Circuit Court    THERESA E. BARREIRO    ACCEPTED: 5/26/2022 10:53 AM    By: CM    Env #18015777

# IN THE CIRCUIT COURT OF THE SIXTEENTH JUDICIAL CIRCUIT
## KANE COUNTY, ILLINOIS 2022-LA-000211

Case No. _____

| | | |
|---|---|---|
| **BRS Insurance Company, on its own behalf and as subrogee of McDonald's Corporation; and McDonald's Corporation** | **Prairie Contractors, Inc.; H&K Dallas, Inc.; H&K International, Inc.; F&M Installation; and H&S Installations** | *Theresa Barreiro*<br>Clerk of the Circuit Court<br>Kane County, Illinois<br>5/23/2022 12:42 PM<br><br>FILED/IMAGED |
| Plaintiff/Petitioner | Defendant/Respondent | File Stamp |

## DEMAND FOR JURY

☒ Original (JUD)    ☐ Change from non-jury (CJUD)

| ☒ PLAINTIFF ☐ DEFENDANT | ATTORNEY |
|---|---|
| Name: | Name: **A&G Law LLC / Robert M. Andalman** |
| Address: | Address: **542 S. Dearborn St. 10th Floor** |
| City, State, Zip: | City, State, Zip: **Chicago, IL 60605** |
| | Telephone: **(312) 348-7629** |

The plaintiff or defendant named herein demands a trial by jury in the above captioned case.

_____

☒ Plaintiff ☐ Defendant

Date: **May 23, 2022** _____

By:   **/s/ Robert M. Andalman** _____
                                                Attorney

This demand must be filed by the plaintiff at the time the suit is commenced or by the defendant no later than the filing of his/her answer, otherwise it shall be deemed that the party has waived trial by jury.

P1-MISC-037 (04/09)