Chubb  
1 Beaver Valley Road  
Wilmington, Delaware 19803  
U.S.A.

O +01.302.476.6779  
M +01.302.513.8177  
amelia.schock@chubb.com

04 August 2022

**VIA EMAIL**  
jratley@munsch.com



Justin K. Ratley  
Munsch Hardt Kopf & Harr, P.C.  
700 Milam Street, Suite 800  
Houston, TX 77002-2806

**EXHIBIT A-4**

| | | |
|---|---|---|
| Re: | Insured: | H&K International, Inc. |
| | Company: | ACE American Insurance Company |
| | Policy No.: | OGLG25702979 |
| | Claimants: | BRS Insurance Company and McDonald's Corporation |
| | Date of Loss: | January 17, 2019 |
| | Claim No.: | KY19K2037321 |

Dear Mr. Ratley:

I write on behalf of ACE American Insurance Company ("ACE") with regard to the complaint filed against H&K International, Inc. ("H&K International") and H&K Dallas, Inc. ("H&K Dallas") by BRS Insurance Company ("BRS") and McDonald's Corporation ("McDonald's"). You forwarded the complaint to ACE for coverage on June 8, 2022. Regrettably, as discussed in greater detail below, ACE has determined no coverage is available for the complaint because a condition precedent for coverage under the policy was not met, namely, that any subcontractor performing welding work on H&K International's behalf maintain liability insurance applicable to such work with limits of at least $5 million per occurrence and in the aggregate. Consequently, ACE must respectfully decline coverage for the complaint.

**The Complaint**

On May 23, 2022, BRS and McDonald's filed a complaint against H&K International and H&K Dallas, among others, in the Circuit Court of the Sixteenth Judicial Circuit, Kane County, Illinois, Case No. 2022-LA-000211. In the complaint, BRS and McDonald's allege McDonald's owns a restaurant located at 1023 North Lake Street in Aurora, Illinois, which is operated by several individuals as franchisees. H&K Dallas allegedly contracted with McDonald's subsidiary, McDonald's USA, LLC ("McD USA"), to serve as an approved supplier for certain equipment, including vent hoods, to be installed in McDonald's restaurants. According to the complaint, H&K International is an affiliate of H&K Dallas, and the franchisees allegedly entered into a contract with H&K International in which H&K International undertook to install certain equipment or fixtures at the restaurant, including a vent hood. H&K International, in turn, allegedly subcontracted with F&M Installation ("F&M") to install the vent hood.

On January 17, 2019, an individual employee, agent, or subcontractor of F&M was allegedly conducting the welding work necessary to install the vent hood when a spark ignited exposed insulation and caused a fire that damaged the restaurant. McDonald's allegedly incurred over $1.5 million in damages due to the fire. BRS allegedly paid a portion of that amount under a reinsurance agreement between BRS and McDonald's

1

insurer. BRS therefore claims to be subrogated to McDonald's rights as to such amount, and they collectively seek to recover from H&K International and H&K Dallas the full amount of the damages McDonald's allegedly incurred. In support, BRS and McDonald's claim H&K International negligently failed to ensure that the welding work was performed in a safe manner, thus causing the fire to occur. They further claim H&K Dallas breached its contract with McD USA by failing to ensure the vent hood was properly installed and that H&K Dallas contractually promised to indemnify BRS for all losses resulting from the improper or defective installation of equipment, including the vent hood.

Please note that, in reciting these allegations, ACE does not mean to suggest they have merit. On the contrary, ACE understands H&K International may dispute the allegations, in whole or in part. Nonetheless, ACE recites the allegations to provide context for its coverage determination stated below.

## Coverage Determination

ACE issued Policy No. OGLG25702979 to H&K International for the policy period from July 1, 2018 to July 1, 2019.[1] The policy provides commercial general liability insurance coverage with limits of $5 million per occurrence and in the aggregate. As pertinent here, under the policy's insuring agreement for Coverage A-Bodily Injury and Property Damage Liability, ACE agreed to pay those sums H&K International becomes legally obligated to pay as damages because of "property damage" to which the insurance applies. By endorsement, however, the policy imposes certain conditions upon coverage with respect to work performed by contractors. In particular, the endorsement states as follows:

> I. SECTION IV –GENERAL LIABILITY CONDITIONS OF THE POLICY IS AMENDED BY THE ADDITION OF THE FOLLOWING:
>
> • SOLELY WITH RESPECT TO "YOUR WORK" INVOLVING ELECTRIC OXYACETYLENE OR SIMILAR WELDING OR CUTTING OR GRINDING EQUIPMENT BLOW LAMPS OR BLOW TORCHES AWAY FROM PREMISES OWN, OPERATED, LEASED OR RENTED BY THE INSURED, WHERE SUCH WORK IS UNDERTAKEN BY SOMEONE OTHER THAN AN "EMPLOYEE" THE FOLLOWING ADDITIONAL CONDITIONS SHALL APPLY:
>
> A) IT IS A CONDITION PRECEDENT TO COVERAGE PURSUANT TO THIS POLICY THAT ANY CONTRACTOR OR SUB-CONTRACTORS UNDERTAKING SUCH WORK ON YOUR BEHALF SHALL HAVE IN FORCE A GENERAL LIABILITY INSURANCE POLICY FOR THE DURATION OF SUCH WORK AND SAID POLICY SHALL BE APPLICABLE IN RESPECT OF ALL ASPECTS AND PROCESSES OF SUCH WORK PERFORMED BY SAID CONTRACTOR OR SUB-CONTRACTOR.
>
> B) THE INSURANCE POLICY REFERENCED IN PARAGRAPH A) ABOVE SHALL HAVE A PER OCCURRENCE AND AGGREGATE LIMIT OF LIABILITY WHICH IS NOT LESS THAN THE PER OCCURRENCE AND AGGREGATE LIMIT OF LIABILITY APPLICABLE TO THIS POLICY.
>
> C) THE INSURED SHALL ENSURE THAT SUCH INSURANCE AS DESCRIBED IN PARAGRAPH B) ABOVE IS IN FORCE DURING THE APPLICABLE POLICY PERIOD OF THIS POLICY.
>
> D) THE TERMS AND CONDITIONS CONTAINED IN THE ENDORSEMENT ENTITLED "CONDITIONS MODIFICATIONS FOR USE OF HEAT/TORCHES" SHALL NOT APPLY WHERE THE CLAIM OR "SUIT" AT ISSUE ALLEGES ONLY THAT THE INSURED IS VICARIOUS LIABLE FOR THE ACTIONS OR OMISSIONS OF A CONTRACTOR OR SUB-CONTRACTOR.

---

[1] You have represented to us that H&K Dallas and H&K International are, in fact, the same legal entity, and that H&K Dallas merely changed the corporation's name to H&K International in 2011. ACE assumes those representations are true for purposes of this letter. ACE nonetheless reserves the right to investigate the matter further, if necessary, and in the event it is discovered H&K Dallas is a different legal entity and does not qualify as an insured, disclaim coverage for H&K Dallas on that additional basis.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

(Policy Endorsement, Conditions Modification for Contractors.)

Here, ACE has determined this condition applies because (a) H&K International contracted to install the vent hood at the restaurant, (b) the installation involved the use of electric oxyacetylene or similar welding equipment, blow lamps, or blow torches, (c) the welding work was performed on H&K International's behalf by a subcontractor, and (d) the complaint does not allege that H&K is vicariously liable for the acts or omissions of the subcontractor. Further, based on prior communications, ACE understands the subcontractor did not have liability insurance applicable to the work with limits of at least $5 million per occurrence and in the aggregate. Consequently, the condition was not met, and no coverage is available under the policy.

In light of the above, ACE must respectfully decline coverage for the complaint. Accordingly, ACE will not undertake to defend H&K International against the complaint, nor will ACE indemnify H&K International for any liability it may incur. In that regard, please be advised that ACE will be instructing attorney Christopher Dallavo, whom ACE previously retained to represent H&K International under a reservation of rights, to withdraw from such representation. H&K International should, therefore, retain counsel to protect its interests in relation to the complaint.

Please note that, by declining coverage on the grounds stated above, ACE does not waive any other coverage defenses that may be available to it. On the contrary, ACE reserves the right to disclaim coverage on any other grounds that may apply. For instance, McDonald's and BRS have asserted claims for breach of contract and contractual indemnity that may not involve a covered "occurrence" (as that term is defined in the policy) or that may be excluded from coverage under the policy's contractual-liability exclusion, which (subject to certain exceptions) bars coverage for "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. Thus, to the extent you have not already done so, you should read the policy in its entirety to familiarize yourself with all of its terms and conditions.

Further, to the extent you believe ACE has misunderstood any of the pertinent facts, or if you have additional information you would like ACE to consider, please let me know immediately so that ACE may review its coverage determination in light of any additional information you provide.

Finally, Part 919 of the Rules of the Illinois Department of Insurance requires that ACE advise you that, if you wish to take this matter up with the Illinois Department of Insurance, it maintains a Consumer Division in Chicago at 122 S. Michigan Ave., 19th Floor, Chicago, Illinois 60603 and in Springfield at 320 West Washington Street, Springfield, Illinois 62767.

Sincerely,

Amelia N. Schock

AVP, Claim Manager, Multinational Claims